**IN THE DISTRICT COURT OF GUAM**

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL CASE NO. 1:21-cr-00024 |
| Plaintiff, | |
| vs. | **DECISION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS** |
| REBECCA ROSE SAN NICOLAS MORTA, | |
| Defendant. | |

Before the Court is Defendant Rebecca Rose San Nicolas Morta's ("Morta") motion to suppress ("Motion"). ECF No. 12. The Government opposed the motion, ECF No. 28, to which Defendant filed a reply. ECF No. 37. The Court conducted an evidentiary hearing over several days. Min., ECF Nos. 44-45, 58. The Government presented the testimony of two witnesses, Task Force Officer Jonathan Calvo, and U.S. Postal Inspector Leroy Versoza, as well as several documents and photographs as evidence. Defendant presented her own sworn declaration and the testimony of two witnesses, her father Jesse Morta, and U.S. Postal Officer Angelina Mapa-Heiland. Having considered the parties' briefing, applicable law, and the relevant record, the Court hereby **DENIES** the Motion for the reasons explained herein.

1

## I. BACKGROUND

On January 31, 2020, a United States Postal Service ("USPS") Priority Mail parcel with the tracking number #9505 5145 2417 0028 2500 74 ("Parcel") arrived in Guam via plane. *See* Opp'n at Ex. 1, ECF No. 28-1; *see also* Versoza Testimony, ECF No. 52 at 32:19-33:10. The Parcel was removed from the plane and brought to the Barrigada Post Office. Calvo Testimony, ECF No. 51 at 55:13-57:21.

There, between approximately midnight and 1:00 a.m. on February 1, 2020, Inspector Versoza "profiled" the Parcel. Versoza Testimony, ECF No. 52 at 27:9-14. "Profiling is taking a package and examining it for inconsistencies or things that would indicate, based on our training and experience, some sort of contraband or something suspicious specifically about this parcel, which includes [the] area . . . in which it was mailed, [the] area in which it was going to, and any other inconsistencies such as miscommon [sic] spellings of names, or in some cases, lack of phone numbers or lack of signature requirement." *Id.* at 14:16-24. Inspector Versoza immediately noticed a discrepancy in zip codes, wherein the "sender" line of the Parcel indicated "Stockton CA 95206" but the postal office origin from which it was mailed indicated a different zip code, in this instance originating from 95213. *Id.* at 25:16-22. This indicated to Inspector Versoza that someone was attempting to obscure the true origin of the Parcel. *Id.* at 25:22-24. Inspector Versoza also noticed that the last name of the sender seemed to be misspelled; wherein Figueroa is a common last name, but Inspector Versoza had never seen it spelled as Figuero**r**a. *Id.* at 25:25-26:2 (emphasis added). The information on the label was handwritten. *Id.* at 26:8-14; *see also* Opp'n at Ex. 1, ECF No. 28-1. Moreover, there were no phone numbers listed on the package. *See* Opp'n at Ex. 1, ECF No. 28-1. As a result of these "flags," Inspector Versoza separated the Parcel for further investigation by a general analyst and continued profiling the other arriving packages. Versoza Testimony, ECF No. 52 at 26:18-27:2.

General analyst On-Fat Choi ("Analyst Choi") took the information on the Parcel and ran it through the PMN database for deconfliction, and the CLEAR database to locate contact information for both the sender and the recipient. *Id.* at 29:2-12. Inspector Versoza and Analyst Choi subsequently learned that the name of the recipient "Mark Mota" did not associate with the address. *Id.* at 30:18-23; *see also* Ex. 11, ECF No. 58. Rather, there was a similar name "Mo**r**ta" associated with the recipient address 165 North Mariposa Court in Dededo, Guam ("Recipient Address"), but no "Mark." *Id.* at 30:21-23 (emphasis added).

At 1:49 a.m. on February 1, 2020, a narcotics canine sniffed, but did not alert to the presence of narcotics in the Parcel. Ex. 11, ECF No. 58. Thereafter, between approximately 2:00 a.m. to 3:00 a.m., Inspector Versoza and Analyst Choi were able to locate sender Monica Figueroa, rather than Figuero**r**a, in CLEAR, at 1726 Benidino Circle in Stockton, California ("Sender Address") as well as four phone numbers associated with her. Versoza Testimony, ECF No. 52 at 31:2-7 (emphasis added).

Inspector Versoza made contact with Monica Figueroa at 12:50 p.m. on Monday, February 3, 2020. Versoza Testimony, ECF No. 52 at 52:8-10; *see also* Ex. 11, ECF No. 58. Ms. Figueroa disavowed all knowledge of the Parcel, stating that she did not send it, nor did she know anything about it. Versoza Testimony, ECF No. 52 at 51:14-25. Nevertheless, Ms. Figueroa did not give Inspector Versoza consent to open the Parcel. Hr'g Tr. 25:24-27:20, Apr. 5, 2022. Based on his training and experience, Inspector Versoza understood this to mean that someone had taken her information and used it, increasing his suspicion as to the contents of the Parcel. Versoza Testimony, ECF No. 52 at 52:3-7. Versoza did not receive this information from Figueroa until hours before the "knock-and-talk" visit at the Morta residence on Monday, February 3rd. *Id.* at 51:6-52:10. A "knock-and-talk" occurs when officers take a package to the listed address, knock on the door, talk to those present at the residence, and request permission to open the package.

3

Calvo Testimony, ECF No. 51 at 101:17-21.

On Monday, February 3, 2020, Inspector Versoza, Inspector Richard Tracy, and TFO Calvo (collectively, the "Officers") conducted "three knock-and-talks," with the last one occurring at the Recipient Address. *Id.* at 69:17-19; 102:10-12. The two prior knock-and-talks did not result in the discovery of any contraband in the packages. *Id.* at 111:6-112:23.

Between approximately 3:30 p.m. and 4:00 p.m. on February 3, 2020, the Officers arrived at the Recipient Address, bringing the Parcel with them. *Id.* at 69:9-19; 70:16-71:3. The Officers approached the porch area of the home, and Inspector Tracy knocked on the door. *Id.* at 72:11-19. A few minutes later, an individual opened the door, identified himself as Jesse Morta, and exited the doorway to join the Officers on the porch. *Id.* at 72:20-73:11; Versoza Testimony, ECF No. 52 at 37:6-13. There, the Officers questioned him for approximately three minutes before Jesse Morta signed a consent form permitting the Officers to open the Parcel on the porch. Calvo Testimony, ECF No. 51 at 105:5-9; *see also* Opp'n at Ex. 2, ECF No. 28-2.

During those three minutes, Jesse Morta identified himself as the registered or resident owner of the house. *Id.* at 74:14-17; 138:15-16. Inspector Tracy inquired about the Parcel, to which Jesse Morta responded that there is no "Mark Mota" residing at his residence. Jesse Morta Testimony, ECF No. 52 at 134:1-7. However, Jesse Morta did state that there is a "Mark" staying at the residence, and that it was Jesse Morta's grandson. Calvo Testimony, ECF No. 51 at 74:18-23. However, there is a discrepancy in the record as to whether Jesse Morta indicated his grandson's full name as "Mark San Agustin," "Mark Morta San Agustin," or only by his first name. *Id.* at 74:22-23; Versoza Testimony, ECF No. 52 at 37:25-38:1; Jesse Morta Testimony, ECF No. 52 at 134:10-12. Jesse Morta also stated that his daughter and her other grandchildren reside at the Recipient Address. Calvo Testimony, ECF No. 51 at 75:1-4; Jesse Morta Testimony, ECF No. 52 at 132:18-22; *see also* Morta Decl. at 4(f), Ex. C, ECF No. 61 ("On February 3, 2020,

4

I was living with my father Jessie Morta as well as with my four children at 165 N. Mariposa Ct.").

Thereafter, Inspector Versoza explained to Jesse Morta his concern regarding the Parcel, namely the inability to identify the "Mark Mota" listed on the Parcel, a result of which he asked Jesse Morta for consent to open the Parcel. Versoza Testimony, ECF No. 52 at 40:3-13. At approximately 3:55 p.m. on February 3, 2020, Jesse Morta signed a written consent form authorizing the Inspectors to search the Parcel. *Id.* at 41:19-42:5; *see also* Opp'n at Ex. 2, ECF No. 28-2. Jesse Morta also gave his verbal consent. *Id.* at 48:4-6. Inspector Versoza testified that if he did not receive Jesse Morta's consent, he did not intend to deliver or relinquish control of the Parcel. *Id.* at 93:23-94:2.

After receiving Jesse Morta's consent, Inspectors Versoza and Tracy opened the Parcel on the porch and found two t-shirts, as well as a box of crackers that appeared to have been resealed with tape. *Id.* at 42:20-43:9. Inspector Versoza opened the resealed cracker box and discovered a vacuum-sealed bag containing coffee grounds and concealed within, another vacuum-sealed bag containing a white crystalline substance. *Id.* at 43:13-19; *see also* Opp'n at Ex. 3, ECF No. 28-3. Inspector Tracy removed the coffee grounds from the cracker box, and one of the Officers asked Jesse Morta whether he knew what this was or if it was something that he was expecting. *Id.* at 44:6-14. Jesse Morta indicated "no," but mentioned that his daughter has a narcotics problem. *Id.* at 44:15-17. Jesse Morta stated that because Defendant was not present at the Recipient Address at the time of the knock-and-talk, he would bring her to the Barrigada Post Office to do an interview with the Officers after she returned home. Calvo Testimony, ECF No. 51 at 83:6-13. This encounter between Jesse Morta and the Officers lasted approximately ten minutes. Versoza Testimony, ECF No. 52 at 48:1-2. The Officers took the now-opened Parcel and its contents back with them to the Barrigada Post Office and tested the white crystalline substance with a narcotics detection kit, which indicated the presence of methamphetamine. *Id.* at 45:17-47:2.

That same evening, the Defendant arrived at the Barrigada Post Office with her father Jesse Morta to be interviewed by TFO Calvo and Inspector Connie Worrel ("Inspector Worrel"). Calvo Testimony, ECF No. 51 at 83:14-21, 90:4-12. Defendant signed a written waiver of her rights form indicating her willingness to talk to TFO Calvo and Inspector Worrel. Opp'n at Ex. 5, ECF No. 28-5.

Defendant initially denied any knowledge of the package. Calvo Testimony, ECF No. 51 at 90:4-7. During the course of the interview, however, Inspector Worrel indicated to Defendant that there was another package with "a lot of similarities" to the Parcel. *Id.* at 90:8-12. Defendant told Inspector Worrel to show her that other package, whereby Inspector Worrel obtained a photocopy of another package and showed it to Defendant. *Id.* at 90:15-18. At that point, Defendant indicated that she was not being truthful with TFO Calvo and Inspector Worrel, and wanted to start the interview over. *Id.* at 90:20-21, 92:10-13. Thereafter, the record is silent as to the contents of the February 3, 2020 interview.

The next day, Defendant returned to the Barrigada Post Office and signed a written consent form authorizing the Inspectors to search her cell phone. Opp'n at Ex. 6, ECF No. 28-6. On the same day, Defendant provided a written statement, indicating that she "agreed to" "a proposition to make money and receive drugs." Opp'n at Ex. 7, ECF No. 28-7.

On September 15, 2021, Defendant was indicted by the grand jury with one count of Attempted Possession with Intent to Distribute Fifty or More Grams of Methamphetamine Hydrochloride, in violation of 21 U.S.C. §§ 846, 841(a)(1) & (b)(1)(A)(viii). ECF No. 1. Defendant now seeks to suppress all evidence obtained from her statements and the search of her cell phone. ECF No. 12. In support of her motion, Defendant signed a declaration stating the Parcel belonged to her. Ex. C, ECF No. 61.

6

## II. DISCUSSION

### A.      LEGAL STANDARD

"The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978). In the case of a warrantless search or seizure, however, the Government bears the burden of proving the admissibility of that evidence by a preponderance of the evidence. *United States v. Huguez-Ibarra*, 954 F.2d 546, 551 (9th Cir. 1992).

### B.      FOURTH AMENDMENT STANDING

The Fourth Amendment to the United States Constitution protects people against unreasonable searches and seizures by the government. It states: "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated." U.S. CONST. amend. IV.

"The term 'standing' is often used to describe an inquiry into who may assert a particular fourth amendment claim." *United States v. Taketa*, 923 F.2d 665, 669 (9th Cir. 1991). "Fourth amendment standing is quite different, however, from 'case or controversy' determinations of article III standing. Rather, it is a matter of substantive fourth amendment law; to say that a party lacks fourth amendment standing is to say that *his* reasonable expectation of privacy has not been infringed. It is with this understand that we use 'standing' as a shorthand term." *Id*. at 669-70 (emphasis in original).

Defendant argues that she has a reasonable expectation of privacy in the Parcel for two reasons: because she has an ownership and possessory interest in the Parcel despite using a fictitious name, and because the Parcel was searched at her home. Mot. at 1-2, ECF No. 12. Conversely, the Government argues that Defendant does not have a reasonable expectation of privacy in the Parcel because Defendant was neither the listed sender nor the listed addressee of

7

the Parcel, and because no additional protections are afforded to her in the curtilage of a home that she is neither the owner nor the resident.[1] Opp'n at 8-9, ECF No. 28. The Court addresses these two arguments in turn, starting with the latter argument.

## I.        CURTILAGE

"[T]he home and its curtilage are sacrosanct[.]" *United States v. Duenas*, 691 F.3d 1070, 1080 (9th Cir. 2012). "The curtilage of one's home warrants the same Fourth Amendment protection as the home itself." *Id.* at 1081. "At the Amendment's 'very core' stands 'the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.'" *Florida v. Jardines*, 569 U.S. 1, 6 (2013) (quoting *Silverman v. United States*, 365 U.S. 505, 511 (1961)). "The front porch is the classic exemplar of an area adjacent to the home and 'to which the activity of home life extends.'" *Id.* at 7. "This right would be of little practical value if [government] agents could stand in a home's porch or side garden and trawl for evidence with impunity[.]" *Id.* at 6.

Here, Inspectors Versoza, Tracy, and TFO Calvo personally brought the Parcel to the Recipient Address on February 3, 2020, between approximately 3:30 p.m. and 4:00 p.m. Versoza Testimony, ECF No. 52 at 69:9-19, 70:16-71:3. The Officers approached the porch area of the home, and Inspector Tracy knocked on the door. *Id.* at 72:11-19. A few minutes later, an individual opened the door, identified himself as Jesse Morta and the owner of the residence, and exited the doorway to join the Officers on the porch. *Id.* at 72:20-73:11; Versoza Testimony, ECF No. 52 at 37:6-13. There, the Officers questioned him for approximately three minutes before Jesse Morta signed a consent form permitting the Officers to open the Parcel. Calvo Testimony, ECF No. 51 at 105:5-9. While in the porch area, the Officers opened the package and discovered what they suspected to be methamphetamine. *Id.* at 81:3-8.

---

[1] Notably, the Government abandoned its argument that Defendant abandoned the Parcel. Min., ECF No. 43.

The Court finds that the porch of the Recipient Address is within its curtilage. *See Jardines*, 569 U.S. at 7 (finding that a front porch amounts to curtilage because it is an "'area adjacent to the home' and 'to which the activity of home life extends.'"). The Court also finds that Defendant was a resident of the Recipient Address but not the owner. Jesse Morta Testimony, ECF No. 52 at 132:18-22; *see also* Morta Decl. at 4(f), Ex. C, ECF No. 61 ("On February 3, 2020, I was living with my father Jessie Morta as well as with my four children at 165 N. Mariposa Ct."). Nevertheless, the Court finds that the "very core" of the Fourth Amendment is not implicated here because government agents, despite being within the curtilage, were not "trawl[ing] for evidence." *See Jardines*, 569 U.S. at 7. Rather, the Officers *brought with them* the Parcel to the Recipient Address in order to conduct a "knock-and-talk." Calvo Testimony, ECF No. 51 at 100:23-101:15. The Officers never surrendered or relinquished control of the Parcel, nor did they intend to. Versoza Testimony, ECF No. 52 at 93:23-94:2 (Q: "If Mr. Morta had not given his consent to the search of that bag, what would have happened to the bag? A: I mean, we wouldn't have seen the bag if he didn't give us his consent at that point, sir. We would have taken the parcel back to the station."). In other words, these Officers did not arrive at the Recipient Address in order to search or seize evidence *already* within the curtilage or within the home, but rather brought the Parcel with them to request consent to open it, without ever intending to relinquish control over it.

The Court finds this difference to be crucial. If bringing a suspected item to an individual's home would automatically imbue that item with the protections of the home or its curtilage, the Fourth Amendment would no longer require courts to apply the "reasonable expectation of privacy standard" to those items. The Supreme Court in *United States v. Jones*, 565 U.S. 400 (2012), held that "nothing in *Katz* requires courts to apply the reasonable expectation of privacy standard *in addition* to finding that the subject of the search was 'persons, houses, papers, [or] effects.'" *Duenas*, 691 F.3d at 1080-81 (emphasis added) (citations omitted). Reasoning that *Katz* extended

9

the Fourth Amendment's protections to non-traditional areas, the Supreme Court in *Jones* "noted that the *Katz* test was '*added to,* not *substituted for*, the common-law trespassory test.'" *Id.* at 1081 (emphasis in original). In other words, courts need not find that a defendant has a reasonable expectation of privacy if the subject of the search was the defendant's home or its curtilage, or effects that are already within them. However, to extend this rule to items brought by law enforcement from outside the curtilage of a home, without surrendering those items, would be inapposite to Fourth Amendment jurisprudence. Otherwise, any item brought from without to within a home's curtilage would, by its physical relocation, evaporate the "reasonable expectation of privacy standard" as to that item. This is not the same as the actual delivery of a package that is left at the home, as Defendant suggests. The Court rejects such an expansive reading of Fourth Amendment protections as they pertain to items brought from without to within the curtilage of a home, but never surrendered, delivered, or tendered.

The Court finds that Defendant is afforded no additional Fourth Amendment protections by virtue of the Parcel being brought by law enforcement to the curtilage of the Recipient Address, despite being Defendant's residence.

## II. REASONABLE EXPECTATION OF PRIVACY IN THE PARCEL

Absent the existence of recognized property rights capable of invasion through "physical intrusion," *Jardines*, 569 U.S. at 5, Defendant must show that she had a "'legitimate expectation of privacy in the premises'" or items that are "searched." *Byrd v. United States*, 138 S. Ct. 1518, 1526 (2018) (quoting *Rakas*, 439 U.S. at 143). "Legitimation of expectations of privacy by law must have a source outside of the Fourth Amendment, *either* by reference to concepts of real or personal property law *or* to understandings that are recognized and permitted by society." *Rakas*, 439 U.S. at 143 n.12 (emphasis added).

The first question "is whether the individual, by his conduct, has 'exhibited an actual

10

(subjective) expectation of privacy,' – whether, in the words of the *Katz* majority, the individual has shown that 'he seeks to preserve [something] as private.'" *Smith v. Maryland*, 442 U.S. 735, 740 (1979) (parentheticals and brackets in original) (internal citations omitted). "The second question is whether the individual's subjective expectation of privacy is 'one that society is prepared to recognize as "reasonable"' – whether, in the words of the *Katz* majority, the individual's expectation, viewed objectively, is 'justifiable' under the circumstances." *Id.* (internal citations omitted).

"Letters and other sealed packages are in the general class of effects in which the public at large has a legitimate expectation of privacy[.]" *United States v. Jacobsen*, 466 U.S. 109, 114 (1984). Both the named senders and addressees of sealed letters and packages may have a legitimate expectation of privacy in their contents, even when those letters and packages are in transit. *See Walter v. United States*, 447 U.S. 649, 658 n.12 (1980). Generally, however, a third party who is neither the sender nor the addressee of a mailed package does not share this privacy interest. *United States v. Pierce*, 959 F.2d 1297, 1303 (5th Cir. 1992) (citing *United States v. Koenig,* 856 F.2d 843, 846 (7th Cir. 1988)). Here, Defendant claims she was the intended recipient of the Parcel even though it was addressed to Mark Mota, a name which Defendant states she knows of no person named as such. *See* Ex. C, ECF No. 61.

## 1.  INTRA- AND INTER-CIRCUIT SPLIT

The Court notes that there is an "intra- and inter-circuit split regarding aliases, particularly criminal aliases" used in place of an individual's legal name. *United States v. Lozano*, 623 F.3d 1055, 1064 (9th Cir. 2010) (per curiam) (O'Scannlain, J., specially concurring). Critically, neither the Supreme Court nor the Ninth Circuit have "decided whether an individual has a legitimate expectation of privacy with respect to a package that is not addressed to him." *Id.* at 1062. In an unpublished decision, a Ninth Circuit panel concluded that an individual has none. *United States*

11

*v. Perez*, 64 F. App'x. 635, 636 (9th Cir. 2003). "Only in the absence of binding precedent do we consider other sources of decisional law such as out-of-circuit cases." *Carrillo v. Cnty. of Los Angeles*, 798 F.3d 1210, 1222-23 (9th Cir. 2015).[2]

Of the Circuit courts that have addressed this issue, six out of seven have held that a Defendant generally does not have a reasonable expectation of privacy in mail when they are neither the listed sender nor addressee of that mail. *United States v. Stokes*, 829 F.3d 47, 52 (1st Cir. 2016); *United States v. Givens*, 733 F.2d 339, 342 (4th Cir. 1984); *United States v. Rose*, 3 F.4th 722, 728 (4th Cir. 2021), *cert. denied*, No. 21-6186, 2022 WL 1131413 (U.S. Apr. 18, 2022); *United States v. Daniel*, 982 F.2d 146, 149 (5th Cir. 1993); *United States v. Koenig*, 856 F.2d 843, 846 (7th Cir. 1988); *United States v. Lewis*, 738 F.2d 916, 920 n.2 (8th Cir. 1984); *United States v. Smith*, 39 F.3d 1143, 1145 (11th Cir. 1994). Of these six Circuits, three of them are split, having also held that a defendant does in fact have a reasonable expectation of privacy in mail despite being neither the listed sender nor addressee. *United States v. Richards*, 638 F.2d 765, 770 (5th Cir. 1981), *cert. denied*, 454 U.S. 1097 (1981); *United States v. Villarreal*, 963 F.2d 770, 774 (5th Cir. 1992); *United States v. Pierce*, 959 F.2d 1297, 1303 n.11 (5th Cir. 1992); *United States v. Pitts*, 322 F.3d 449, 459 (7th Cir. 2003); *United States v. Garcia-Bercovich*, 582 F.3d 1234, 1238 (11th Cir. 2009). The Tenth Circuit is the only Circuit that has reasoned dicta supporting a defendant's reasonable expectation of privacy in an alias, stating that "it is not necessarily illegal to use a pseudonym to receive mail unless fraud or a stolen identification is involved." *United States v. Johnson*, 584 F.3d 995, 1002 (10th Cir. 2009). "[B]ecause of the potential harm to third parties, there is a fundamental difference between merely using an alias to receive a package and

---

[2] This Court has previously found standing through a defendant's sworn declaration attesting that certain packages were intended for him despite being neither the listed sender nor addressee. *United States v. Cruz*, No. CR 15-00041, 2016 WL 8679262, (D. Guam Sept. 2, 2016), *rev'd and remanded on other grounds*, 751 F. App'x 1029 (9th Cir. 2019). Nevertheless, a "'decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.'" *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (citation omitted).

12

using another's identity." *Id.* In sum, three Circuits find that no reasonable expectation of privacy exists in a pseudonym or alias alone, one Circuit finds the opposite, and another three Circuits are split between these two positions. The reasoning behind each Circuit's decisions is critical to understanding the law as it stands today, and therefore the Court summarizes each below.

The First and Fourth Circuits have developed the "other indicia" test. Namely, they have held that a defendant does not have a reasonable expectation of privacy in mail when they are neither listed as the sender nor the recipient of that mail, *absent other indicia or connections*. *Stokes*, 829 F.3d at 52; *Rose*, 3 F.4th at 728. In *Stokes*, the First Circuit, declining to "decide whether a defendant *ever* could have a reasonable privacy interest in mail where he is not listed as the addressee or addressor," nevertheless noted that courts "have been reluctant to find that a defendant holds a reasonable expectation of privacy in mail where he is listed as neither the sender nor the recipient, at least *absent some showing by the defendant of a connection*." 829 F.3d at 52-3 (emphasis added). Moreover, the First Circuit denied the defendant's motion to suppress after it held that an "address alone" cannot create a reasonable expectation of privacy in a parcel. *Id.* at 53. The court reasoned that the defendant failed to "shoulder his burden" with a conclusory affidavit containing a "blanket assertion that [defendant] has a privacy interest" in mail coming to him. *Id.* The court indicated factors it considered to be important, such as "whether anyone else had access to these [addresses], what the nature of the delivery receptacle was, or any other information that could shed light on the reasonableness of his privacy interest." *Id.*

The Fourth Circuit has twice held that an individual does not have a legitimate expectation of privacy in a package that is not addressed to him. *See Givens*, 733 F.2d at 342; *Rose*, 3 F.4th at 722. In both *Givens* and *Rose*, the Fourth Circuit held that the defendants did not have reasonable expectations of privacy in packages because they were neither addressed to them nor any established alter ego, despite those defendants being the intended recipients of those packages.

13

*Givens,* 733 F.2d at 341-42; *Rose*, 3 F.4th at 729-30. In *Rose*, the Fourth Circuit reasoned that "[w]hen a sealed package is addressed to a party other than the intended recipient, however, that recipient does not have a legitimate expectation of privacy in the package *absent other indicia* of ownership, possession, or control existing at the time of the search." *Rose*, 3 F.4th at 728 (emphasis added). In each of the cases, the court found that the defendants had failed to establish that they were the addressee, or that they otherwise had ownership, possession, or control of the package at the time of the search.

The Eighth Circuit, in a less explicated approach than the First and Fourth Circuits, held that a defendant "lacked a legitimate expectation of privacy in a mailbox and its contents" because "no one by that [fictitious] name" resided at the address. *Lewis*, 738 F.2d at 919 n.2. Without explicitly stating that it relied on "other indicia," the Eighth Circuit nevertheless looked at whether the defendant had a connection to the mailbox, its contents, and the listed address. *Id.*

The Fifth, Seventh, and Eleventh Circuits have an intra-circuit split. One line of cases, more categorical than the "other indicia" approach above, holds that a defendant does not have a reasonable expectation of privacy when they are neither the sender nor the addressee. *Daniel*, 982 F.2d at 149 (finding that defendant had no standing where defendant's theory of defense was that defendant and alias were different persons); *Koenig*, 856 F.2d at 846 ("Because [the defendant] was neither the sender nor the addressee of the package and thus has no privacy right in it, he therefore has no standing to make the request" to reverse the district court's refusal to suppress evidence found in the package); *Smith*, 39 F.3d at 1145 (finding that defendant had no standing where defendant was neither the sender nor the addressee of the mail, and was unable to otherwise establish an ownership interest in the mail) (citing *Givens,* 733 F.2d at 341-42; *Pierce*, 959 F.2d at 1303; *Koenig*, 856 F.2d at 846).

However, the other line of cases holds that a defendant has a legitimate expectation of

14

privacy in mail despite using a name other than the individual's legal name as the listed sender or addressee. In other words, a defendant using a pseudonym, alias, or fictitious name may nevertheless have a legitimate expectation of privacy. The Fifth Circuit has held that a defendant has a legitimate expectation of privacy in mail addressed to their "alter ego." *United States v. Richards*, 638 F.2d 765, 770 (5th Cir. 1981), *cert. denied*, 454 U.S. 1097 (1981) (defendant was the owner of the company that was the addressee); *United States v. Villarreal*, 963 F.2d 770, 774 (5th Cir. 1992) (defendant went by the name listed on the package); *Pierce*, 959 F.2d at 1303 n.11 (drawing a distinction between packages addressed to the "alter ego" of a defendant, and those addressed to individuals other than a defendant).

The Seventh Circuit addressed this issue in *United States v. Pitts*, 322 F.3d 449 (7th Cir. 2003), wherein the majority found that defendants "had a right to use false names in sending and receiving mail" and thereby had subjective expectations of privacy in their "desire to remain anonymous when sending or receiving a package[.]" *Id.* at 459 (denial of motion to suppress on other grounds). The concurrence, however, noted that denial of the motion to suppress would be "better grounded" on the basis that while defendants have a subjective expectation of privacy in using "phony names," such use of an alias is not one that "our society is prepared to recognize as reasonable." *Id.* at 460-61 (Evans, J., concurring). While the majority did not distinguish between established aliases for criminal and non-criminal purposes, *Id.* at 458-59, the concurrence contrasted the use of established, publicly known alter egos, such as *nom de plumes*, with the passing use of fictitious names. *Id.* at 460-61 (Evans, J., concurring). The Eleventh Circuit begins where the Seventh Circuit ends and holds that a defendant has a reasonable expectation of privacy in mail even if addressed to a fictitious name. *United States v. Garcia-Bercovich*, 582 F.3d 1234, 1238 (11th Cir. 2009) (citing *Villarreal*, 963 F.3d at 774).[3]

---

[3] The Court notes that the "fictitious" name in *Garcia-Bercovich* is not entirely fictitious. Defendant Angel Garcia-

Altogether, this line of cases holds that a defendant may have a reasonable expectation of privacy, despite being neither the sender nor the addressee, so long as defendant could establish, to varying degrees, some connection to their "alter ego," "alias," or "fictitious name."

The Ninth Circuit "has not decided whether an individual has a legitimate expectation of privacy with respect to a package that is not addressed to him." *Lozano*, 623 F.3d at 1062. "In an unpublished, nonprecedential decision, however, we held that a defendant did not have a legitimate expectation of privacy in a package addressed to a co-resident of his home." *Id.* (citing *Perez*, 64 F. App'x at 636). "But four other circuits have held, and one has stated in reasoned dicta, that an individual does not have a legitimate privacy expectation in a package that is not addressed to him." *Id.* at 1062-63 (citing cases in the Fourth, Fifth, Seventh, Eighth and Eleventh Circuits). Judge O'Scannlain, concurring in the judgment, urged the Ninth Circuit to adopt the holding that "a defendant does not have a legitimate expectation of privacy in a package not addressed to him, even if it listed his street address and even if the addressee was his criminal alias." *Id.* at 1064.

The Court notes that since the *Lozano* opinion, the aforementioned "other indicia" test has been adopted by the First and Fourth Circuits. *Stokes*, 829 F.3d at 52 (noting that courts are "reluctant to find that a defendant holds a reasonable expectation of privacy in mail where he is listed as neither the sender not the recipient, *at least absent some showing by the defendant of a connection.*") (emphasis added); *see also Rose*, 3 F.4th at 728 ("When a sealed package is addressed to a party other than the intended recipient, however, that recipient does not have a legitimate expectation of privacy in the package *absent other indicia* of ownership, possession, or control existing at the time of the search.") (emphasis added).

The Court is cognizant of these intra- and inter-circuit splits, and thereby carefully adopts

---

Bercovich received a package containing narcotics that was intended for "Angel at Natural Heat Systems." *Garcia-Bercovich*, 582 F.3d at 1236. While the record is silent as to whether the defendant was associated with Natural Heat Systems, the Court finds that it is hardly accurate to state that the use of a defendant's own first name is "fictitious."

16

the more recent "other indicia" approach of the First and Fourth Circuits over Judge O'Scannlain's suggested approach in the *Lozano* concurrence. The Court does so for two reasons.

First, the Court finds that this approach requires a deeper analysis of relevant factors than the *Lozano* approach. Under the *Lozano* approach, an individual's privacy interest is tethered to their name on the package, whether as a sender or an addressee. It matters not whether an individual has an association with the address listed on the very same package, and it matters slightly more whether a defendant uses a public alias, but only if that public alias was used solely for criminal purposes. *See Lozano*, 623 F.3d at 1064 ("I would hold that a defendant does not have a legitimate expectation of privacy in a package not addressed to him, *even if it listed his street address and even if the addressee was his criminal alias*.") (emphasis added). The "other indicia" approach, however, is more tethered to the totality of the circumstances. The Court would start where *Lozano* ends, and inquire beyond whether the individual is a sender or an addressee. Indeed, the Court would look at the line immediately beneath the sender or the addressee, namely, the listed physical address. Moreover, the Court would analyze "other indicia" of ownership, possession, control, or connection. Such indicia include whether the individual has a *connection* to the address or those that reside at the address; whether the individual is the *owner* of the address, the package, or the receptacle in which the package is deposited; whether the individual physically *possessed* the package; and whether the individual exercised *control* and dominion over the package. Such a fact-intensive inquiry provides a more practical approach to determining Fourth Amendment standing, as opposed to a legalistic approach that focuses on one line of a package (the sender or addressee) to the exclusion of the line directly underneath (the physical address).

Second, the Court finds that this "other indicia" approach will maintain the important societal practice of using a pseudonym, alias, or *nom de plume*. Adopting the *Lozano* test would dissuade individuals from using these monikers because they would lose either one or another form

17

of privacy. Specifically, individuals could use these monikers but risk losing their right to privacy under the Fourth Amendment since they are neither the sender nor addressee of the mail, or individuals could use their legal names but risk losing their right to privacy from the public. Consequently, adopting the *Lozano* test would create a chilling effect on an established societal practice. Under the "other indicia" test, however, individuals would continue to be able to use a pseudonym, alias, or *nom de plume*, without losing either their privacy under the Fourth Amendment or to the public, so long as they had some other connection to the mail. For instance, a writer using a pen name would be able to correspond with readers without revealing her identity and address to the public, *and* without losing her Fourth Amendment right to privacy from government intrusion. Moreover, the burden would still remain on the defendant to establish that his or her moniker is not one used solely for criminal purposes. Thus, adopting the "other indicia" approach would not only maintain an established societal practice, but simultaneously afford citizens privacy from the government and from the public.

The Court thus adopts the "other indicia" approach as follows. An individual has a reasonable expectation of privacy in a sealed mail or packages when they are listed as the sender or the addressee. An individual does not have a reasonable expectation of privacy in mail or packages when they are neither listed as the sender nor the addressee, *absent some other indicia* indicating ownership, possession, control, or connection to that mail or package. An individual does not automatically lose their right to privacy under the Fourth Amendment solely by using a pseudonym, alias, or *nom de plume*. An individual, does, however, lose their right to privacy when using a moniker solely for criminal purposes.

### 2. DEFENDANT DOES NOT HAVE A REASONABLE EXPECTATION OF PRIVACY IN THE PARCEL

The Court applies the "other indicia" approach, and finds that Defendant does not have a reasonable expectation of privacy in the Parcel.

18

Defendant Rebecca Rose San Nicolas Morta is neither the sender nor the addressee of the Parcel. Opp'n at Ex. 1, ECF No. 28-1 (photo of Parcel indicating sender is "Monica Figuerora, 1726 Benidino Cir., Stockton CA 95206" and the addressee is "Mark Mota, 165 N. Mariposa Ct., Dededo GU 96929."). Thus, presumptively, Defendant does not have a reasonable expectation of privacy, absent some other indicia of ownership, possession, control, or connection. Morta, through her declaration, conclusively asserts she did have ownership, possession and control of the parcel at the time it was detained by the Postal Inspectors, and at the time it was opened without a search warrant. Morta Decl. at 4(a), Ex. C, ECF No. 61.

Courts look at numerous factors in determining ownership, possession, control, or connection, "including the sender's name, the named recipient, the address, or the phone number listed on the packages." *Rose*, 3 F.4th at 729. Additionally, courts look at the "historical use of the property searched or the thing seized; the ability to regulate access; the totality of the surrounding circumstances; the existence or nonexistence of a subjective anticipation of privacy; and the objective reasonableness of such an expectancy under the facts of a given case." *Stokes*, 829 F.3d at 53; *Rose*, 3 F.4th at 727-28.

This Court finds that Defendant does not have sufficient ownership, possession, control, or connection to the Parcel. The record indicates that the sender's name, Monica Figuerora, bears no connection to Defendant. According to Inspector Versoza, he spoke to Monica Figueroa (not Figuero**r**a) residing at the Sender Address, and she disclaimed any knowledge of the Parcel or its contents. Versoza Testimony, ECF No. 52 at 51:14-25. The Defendant herself expressly disavowed knowledge of the named recipient, Mark Mota, in her declaration. Morta Decl. at 4(d), Ex. C, ECF No. 61. ("The package was addressed to Mark Mota. I know of no person by the name of Mark Mota."). The registered owner of the Recipient Address, Jesse Morta, testified that there is no "Mark Mota" residing at his residence. Jesse Morta Testimony, ECF No. 52 at 134:1-7.

19

Defendant does have a connection to the Recipient Address given that she, her father, and her children live there. Morta Decl. at 4(f), Ex. C, ECF No. 61. ("On February 3, 2020, I was living with my father Jessie Morta as well as with my four children at 165 N. Mariposa Ct."). There were no phone numbers listed on the Parcel for either the sender or the intended recipient, and the Officers only found phone numbers through a search of the CLEAR database. *See* Opp'n at Ex. 1, ECF No. 28-1; *see also* Ex. 11, ECF No. 58. The record further indicates that Defendant had no historical use of the Parcel because it was seized prior to Defendant obtaining or possessing it. Nevertheless, Defendant has declared that she had a subjective anticipation of privacy in the Parcel. Morta Decl. at 4(c), Ex. C, ECF No. 61 ("I expected that the contents of the package as well as knowledge of its contents would remain my private matter, with the possible exception of the sender of the package."). In sum, there are two indicia connecting Defendant to the package: that she asserted a subjective anticipation of privacy in the Parcel, and that she lives at the Recipient Address.

The Court finds that these two indicia alone fail to sufficiently confer Defendant a reasonable expectation of privacy in the Parcel. In *Stokes*, the First Circuit found that the defendant's "blanket assertion that [the defendant] has a privacy interest in 'my mail coming to me' includes mail containing no indication that it is associated with [the defendant]." *Stokes*, 829 F.3d at 53. The First Circuit found the defendant's privacy assertion too broad and unspecified to establish a reasonable expectation of privacy. Furthermore, the First Circuit was hard-pressed to find that "an address alone [could] create a reasonable expectation of privacy in a parcel." *Id.* Here, while Defendant asserts her subjective privacy interest with more detail than the defendant in *Stokes* by indicating that she expected the specific contents of a specific package, the Court finds that such an assertion fails to rise to the level of objective reasonableness. Other than being addressed to the Recipient Address, there is "no indication that [the Parcel] is associated with

[Defendant]." *Id.* And because an "address alone" is insufficient to create an objectively reasonable expectation of privacy, the Court finds that Defendant is insufficiently connected to the Parcel for purposes of asserting Fourth Amendment standing.

Furthermore, Defendant failed to establish that "Mark Mota" was her alias. Defendant expressly declared that she knows no person by that name. Morta Decl. at 4(d), Ex. C, ECF No. 61 ("The package was addressed to Mark Mota. I know of no person by the name of Mark Mota."). Although Morta declared that she worked out the name that would be used on the package for the addressee with the actual sender, the Court finds that Defendant is insufficiently connected to the Parcel. Morta Decl. at 4(e), Ex. C, ECF No. 61. The Court notes that the record is silent as to whether Defendant previously used "Mark Mota" to receive packages, or that she held herself out as "Mark Mota" to others, or whether she used that alias for criminal purposes only. If Defendant used "Mark Mota" for criminal purposes only, she would not have a reasonable expectation of privacy. If she used "Mark Mota" for non-criminal purposes as well, she may have a reasonable expectation of privacy so long as it was an established pseudonym. However, because Defendant bears the burden to establish Fourth Amendment standing, *Rakas*, 439 U.S. at 130 n.1, and because Defendant has failed to prove instances where she used "Mark Mota" as an established pseudonym for non-criminal purposes, the Court finds that Defendant has failed to meet her burden to establish a reasonable expectation of privacy in the Parcel.

Defendant declared that she used another false name, unknown to the Court, for at least one other parcel in the past, and that she was able to receive that package. Morta Decl. at 4(e), Ex. C, ECF No. 61. Officers testified that they did identify a package with "a lot of similarities" to the Parcel, but failed to indicate whether the package was used for criminal purposes. Calvo Testimony, ECF No. 51 at 90:8-12. The fact that the Officers were able to recognize "a lot of similarities," which may have included the same or similar names, does not amount to Defendant

using a publicly established pseudonym. In other words, just because law enforcement recognizes certain names on packages does not permit a defendant to argue that they held themselves out publicly under an established pseudonym listed on that package. For these reasons, the Court finds that Defendant's previous use of unidentified names as she asserted in her Declaration are insufficient to establish a reasonable expectation of privacy in the Parcel.

Even if Defendant had argued that the Parcel was addressed to a co-resident, in this case a misspelled version of her son's name, the Court still finds that Defendant lacked a reasonable expectation of privacy. In *Perez*, an unpublished decision, the Ninth Circuit held that a defendant did not have a legitimate expectation of privacy in a package addressed to a co-resident of his home. *Perez*, 64 F. App'x at 636. While the package was not addressed to the defendant, the defendant argued that he had a privacy interest in the home of the addressee where he resided at the time. *Id.* The Ninth Circuit held that the defendant's privacy interest was irrelevant because the package was detained at the post office. *Id.* Under this framework, Defendant's argument that she had a reasonable expectation of privacy in a package addressed to her son, albeit misspelled, would be irrelevant because the Parcel was detained at the Barrigada Post Office.

In sum, Defendant does not have Fourth Amendment standing for two reasons. First, Defendant is neither the sender nor the addressee of the Parcel, and thereby presumptively does not have a reasonable expectation of privacy. Second, Defendant fails to meet her burden of establishing "other indicia" sufficient to connect her to the Parcel for purposes of establishing a reasonable expectation of privacy.

///

///

///

///

22

### III.    CONCLUSION

Because Defendant lacks standing to challenge the search and seizure of the Parcel, the Court

**DENIES** Defendant's motion to suppress. ECF No. 12.

**IT IS SO ORDERED.**

May 9, 2022.                                         _____/s/_____
                                                        The Honorable Ramona V. Manglona
                                                        Designated Judge, District Court of Guam

23